## UNITED STATES SHIPPING BOARD MERCHANT FLEET CORPORATION v. DIETRICH.

Circuit Court of Appeals, Second Circuit.
July 9, 1928.

No. 291.

I. Indemnity ⊜15(7)—Evidence held not to establish Fleet Corporation's promise to pay judgments which might be recovered by shippers against operating agent.

In action by shipper against United States Shipping Board Fleet Corporation for damages to shipment on vessel operated by defendant's operating agent, evidence held not to establish defendant's alleged promise to pay any judgments which might be recovered by shippers against said agent.

2. Indemnity ⊜15(6)—Allegation that Fleet Corporation agreed to pay judgments against its operating agent held not allegation of agreement to pay expenses of voyage.

In action by shipper against United States Shipping Board Fleet Corporation for damages to shipment on vessel operated by defendant's operating agent, allegation of complaint on information and belief that defendant agreed with operating agent to pay shippers any judgments which might be recovered against agent by reason of breach by agent of contract of carriage

27 F.(2d)—43½

held not an allegation that defendant agreed to pay expenses of the voyage, whether reduced to judgment or not.

3. Indemnity ⊜9(1)—Any obligation of Fleet Corporation to indemnify operating agent for expenses held not promise to pay judgment therefor.

Any obligation of Shipping Board Fleet Corporation to indemnify its operating agent for agent's expenses of voyage or agent's charges and disbursements held not a promise to pay a judgment for such charges and disbursements.

4. Indemnity ⊜7—Any promise of Fleet Corporation to indemnify operating agent for voyage expenses held for benefit of such agent, not for shippers.

Any promise by Shipping Board Fleet Corporation to indemnify operating agent for expenses of voyage, charges, or disbursements held for benefit of such agent, not for those who might be incidentally benefited by having agent supplied with funds, and shipper, whose shipment was damaged as result of delay and deviation, was not entitled to recover thereon.

5. Appeal and error ⊜241—Rule that defects of complaint must be specified in motion to dismiss does not preclude appellate review for absence of sufficient motion, where error clear.

Rule that supposed defects in complaint should be specified in motion to dismiss does not prevent review by appellate court because of absence of sufficient motion, where the error is clear, and especially where trial court has expressly declined to hear argument on the motion.

In Error to the District Court of the United States for the Southern District of New York.

Action by Dallas W. Dietrich, doing business as the Atlantic Seaboard Flour Mills, against the United States Shipping Board Merchant Fleet Corporation. Judgment for plaintiff, and defendant assigns error. Reversed.

The suit was begun in the Supreme Court of the state of New York for New York county and thereafter removed into the District Court on the ground that the action arose under a law of the United States, inasmuch as the defendant was incorporated under an act of Congress.

Charles H. Tuttle, U. S. Atty., of New York City (George Biddle, Sp. Asst. U. S. Atty., of New York City, of counsel), for plaintiff in error.

Neil P. Cullom, of New York City (Henry W. Steingarten, of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. For an understanding of the errors assigned it is necessary to refer to former litigation between the parties, as well as to analyze carefully the complaint in the present suit.

In August, 1921, plaintiff shipped flour on the steamship Panola, to be carried from Philadelphia to Helsingfors, Finland. The vessel was owned by the United States and operated by Susquehanna Steamship Company under a contract, known as the M. O. 4 form of agreement, between defendant and its operating agent. The vessel was delayed in sailing, so that plaintiff's flour was not delivered at the port of discharge until about November 18, 1921, and plaintiff claimed that thereby he lost his market and suffered damage of nearly $4,000. On March 29, 1923, he brought suit against defendant to enforce this claim. This suit, hereafter referred to as the first suit, was tried in the District Court for the Eastern District of New York on October 4, 1923. At the close of plaintiff's case, defendant moved to dismiss the complaint, and the court granted this motion, on the ground that the evidence—the M. O. 4 agreement—did not establish liability on the part of the defendant. From the judgment of dismissal, plaintiff sued out a writ of error. We affirmed the judgment in Dietrich v. U. S. Shipping Board E. F. Corp., 9 F. (2d) 733. Judge Rogers' opinion states that the Susquehanna Company was the agent of defendant, and the latter was obligated by the bills of lading issued by its agent, but that their terms excused the acts complained of in the libel.

While the first suit was pending, plaintiff began a second suit, on August 17, 1923, against Susquehanna Steamship Company, charging the same breach of contract of carriage against it. The defense of this suit was first undertaken by the United States attorney for the Southern district of New York, acting for the Fleet Corporation. Subsequently he withdrew, and the Susquehanna's own counsel was substituted as its attorney of record. On May 22, 1924, a judgment by default was entered for plaintiff for $4,481.-51. The Susquehanna Company was then without assets and nothing was recovered on that judgment.

On February 8, 1926, plaintiff brought the present suit against defendant. Prior to trial, a motion by defendant to dismiss the complaint, on the ground that the judgment of dismissal in the first suit was res adjudicata, was denied. This order is assigned as error. Plaintiff contends that it is not properly subject to review, because no exception was taken to it, and because it was not stated as a ground for dismissal when defendant moved to dismiss at the close of plaintiff's case, and that in any event the defense of res adjudicata, which was also pleaded in the answer, is insufficient, on the ground that the judgment of dismissal in the first suit was not on the merits, and that the present suit is on a different cause of action. This brings us to an analysis of the complaint.

It is impossible to know with certainty from the complaint what cause of action the plaintiff attempts to allege. It sets out (1) that the defendant was engaged in the operation of steamships as a common carrier for hire, and operated the Steamship Panola between Philadelphia and Helsingfors in August to November, 1921; (2) that on August 31, 1921, defendant solicited plaintiff to ship a consignment of flour on said vessel, and "warranted and represented" that, although the bills of lading would be signed by Susquehanna Steamship Company, Inc., the defendant was the principal and would perform the contract of carriage, and would "pay any judgments which might be recovered by shippers because of a breach of the contract of carriage, against said agent"; (3) that in reliance upon said warranty and representation plaintiff made his shipment and accepted bills of lading signed by said Susquehanna Company; (4) that defendant, through its said agent, broke the contract of carriage by unlawfully delaying and deviating from the contemplated voyage, to plaintiff's damage in the sum of $4,480.31; (5) that thereafter plaintiff recovered a judgment for said sum against defendant's said agent, the Susquehanna Company, for breach of said contract of carriage, and "the judgment roll in said action is hereby pleaded"; (6–11) that in said suit defendant's attorney, appearing for said Susquehanna Company, stated that defendant was obligated to pay any judgment which might be rendered against its said agent, and that it was defendant's uniform practice to pay such judgments, and in reliance upon such statement plaintiff granted said agent an extension of time to plead; that the judgment remains unpaid, the Susquehanna Company is and was at all times insolvent, and was a mere dummy selected by defendant, in reckless disregard of the interests of the shippers whose merchandise it undertook to carry; (12) that defendant has refused to pay plaintiff the amount of said judgment "in accordance with its

agreement aforesaid," although due demand therefor has been made.

Paragraphs (1) to (4) of the complaint are sufficient to charge a contract of carriage by defendant, evidenced by bills of lading signed by its agent, the Susquehanna Company, and a failure to perform said contract to the plaintiff's damage. This would be the same cause of action passed upon in the first suit, and, if the present complaint were construed as setting up this cause of action, we should have to consider the defense of res adjudicata. It is true that in the first suit the District Judge stated that he did not pass·upon the merits, but dismissed upon the plaintiff's failure to make sufficient proof. Nevertheless the judgment entered of record contains no recital that the dismissal is with·out prejudice, and it would seem, in view of section 482 of the New York Practice Act, that the former judgment would be a complete answer to the present suit, if the latter be deemed to allege the same cause of action. But we need not pass definitely upon this question, for plaintiff expressly disclaims in his brief that he is suing upon the contract of carriage. He asserts that "the instant suit is brought upon a judgment and the defendant's promise to pay the same."

[1] Viewing the complaint as declaring upon a promise to pay the judgment recovered against the Susquehanna Company, we find, in folios 16, 17, the allegation that the contract of carriage was induced by the defendant's warranty that it would "pay any judgments which might be recovered by shippers * * * against said agent." This would be sufficient as an allegation, but there is no proof of such a promise. Ball, the broker who acted for plaintiff in booking space on the vessel, testified that Silver, defendant's traffic manager, told him "that the Emergency Fleet Corporation were back of the Susquehanna Steamship Company all the time," and that he passed this information on to plaintiff's manager. A similar statement was made by McFadden, an agent of the Susquehanna Company. But this is far short of a contract by defendant to pay any judgment recovered against its agent. It is no more than a representation that the Susquehanna Company is defendant's agent. At folio 20 it is alleged that defendant's attorney stated that defendant was obligated to pay any judgment against its operating agents, and made a uniform practice of paying such judgments, and that plaintiff, in reliance thereon, extended time for the Susquehanna Company to plead. If this be deemed

an allegation of a contract to pay any judgment rendered in that suit, there is no evidence of the attorney's authority to make such a contract. Certainly such authority is not within the general powers of an attorney.

Finally there is the theory that defendant's agreement with its agent—"the M. O. 4 agreement"—bound defendant to pay the costs and expenses incident to the operation of the Steamship Panola, that sums due to shippers for breach of contracts of carriage were such expenses, and that this agreement was for the benefit of shippers, including plaintiff. This was the theory submitted to the jury; plaintiff's judgment against Susquehanna Company being used as proof of the amount of his claim, if his claim was to be deemed an expense of the voyage. The judge charged:

"So, gentlemen, the question for you to determine is whether the damage to this shipment, as represented by this judgment, was, under the terms of this contract, such expense as the defendant undertook to pay in connection with the operation of the vessel that transported the shipment in question. If you find from a preponderance of the evidence that it was within the provisions of the contract—that is, was a part of the costs and expenses incident to the management and operation and conduct of the business of the vessel—you should return a verdict in favor of the plaintiff here for the amount of the said judgment, together with interest to this date, which, I think the testimony was, amounts to $5,385.37."

[2, 3] One difficulty with this theory is that there is absolutely nothing in the complaint which can be thought to allege it, unless it be (folios 21, 22) "that, in fact, upon information and belief, defendant agreed with said Susquehanna Company to pay to shippers any judgments which might be recovered against said Susquehanna Company and various and sundry. of its other operating agents by reason of the breach by them of the contract of carriage." This is scarcely an allegation that defendant agreed to pay expenses of the voyage, whether reduced to judgment or not. But a more serious difficulty is that we can find in the M. O. 4 agreement no language capable of being construed as an agreement to pay to shippers any judgments they may recover against the agent. We may, perhaps, find in the agreement an obligation by defendant to indemnify its agent for expenses of the voyage, though even this obligation is not express.

But an obligation to pay charges and disbursements of the agent is not a promise to pay a judgment for such charges and disbursements. To promise to pay the judgment is to put oneself at the agent's mercy in defending the action, and should require specific language on the part of the principal. There is no such promise in the agreement.

[4] Viewing the agreement as including a promise to indemnify the agent against proper expenses of the voyage, the plaintiff is confronted, first, with the objection that the complaint alleges no such cause of action; and, second, if that defect could be cured, that the promise itself is not one for the benefit of the plaintiff, which would entitle him to sue at law in a federal court. It is for the benefit of the agent, not for those who might be incidentally benefited by having the agent supplied with funds. Whether it is an equitable asset of the Susquehanna Company, which plaintiff could reach by bill in equity in the nature of an equitable execution to satisfy his judgment, we need not consider.

[5] The attorney for the defendant took no exception to the judge's charge, and plaintiff denies that any question is open for review, asserting that the record fails to disclose any sufficient motion by defendant to dismiss. When the plaintiff rested, the defendant's counsel stated: "If your honor please, I would like to move to dismiss the complaint. Do you care to hear argument at this time?" To which the court replied: "No; not at this time." After the jury had been charged, defendant's attorney attempted to have the record show that the motion to dismiss was renewed at the close of the case. The court stated that he thought such a motion had been made, but, in any event, it might then be made, and he proceeded to overrule it, allowing defendant an exception.

The plaintiff contends that the motion at the close of plaintiff's case was ineffectual, because it did not specify the grounds upon which defendant relied. That supposed defects should be specified in the motion is undoubtedly the New York rule, and has been approved by this court in Am. Concrete Steel Co. v. Hart, 285 F. 322, 325. Nevertheless, this rule need not tie our hands, where the error is clear, and especially when the court expressly declines to hear argument.

For reasons already stated, the judgment cannot be sustained, and is accordingly reversed, with costs to plaintiff in error.